UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CHANCE WILLIAM PERKINS,

               Plaintiff,

v.

AUDREY GARNZEY et al.,

               Defendants.

_____/

Case No. 1:26-cv-665

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined Defendants Burrows,[1] Adams, and Pant. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

---

[1] Plaintiff refers to Defendant Burrows as "Burrows" and "Barrows." In this opinion, the Court refers to this Defendant as "Burrows," which is the spelling that Plaintiff used in the case caption of the complaint. (Compl., ECF No. 1, PageID.1.)

irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim as detailed below.

## Discussion

### I.      Motion to Appoint Counsel

Plaintiff submitted a letter to the Court seeking assistance in filing a request for a court-appointed attorney. (ECF No. 7.) The Court construes this letter as a motion for a court-appointed attorney. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr*., 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct*., 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. *Lavado*, 992 F.2d at 606. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See id.* The Court determines that, at this time, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's motion for appointment of counsel (ECF No. 7) will be denied.

### II.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains occurred at that facility as well as the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan, and the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan. Plaintiff sues "MDOC staff," DRF Medical Provider Audrey

Garnzey, SLF "Medical Doctor/Provider" Unknown Burrows, SLF Nurse Unknown Adams, and ECF Nurse Lydia Pant. (Compl., ECF No. 1, PageID.1, 2–3.) Plaintiff sues all defendants in both their official and individual capacities. (*Id*.)

Plaintiff alleges that beginning no later than February 2025, he informed unidentified "medical staff" of various symptoms he was experiencing but was denied medical care. (*Id*., PageID.6.) Plaintiff alleges that all the medical providers have told him that he is "completely healthy," that they refuse to conduct any testing, and they threaten Plaintiff about writing grievances. (*Id*., PageID.7.)

Specifically, on July 23, 2025, Plaintiff was seen by Defendant Garnzey while Plaintiff was housed at DRF. (Attachment A to Compl., ECF No. 1-1, PageID.19.) Defendant Garnzey told Plaintiff that she would not "waste[] her time testing [Plaintiff's] blood because [he] got her into trouble by writing a grievance on her for refusing medical care." (*Id*.) Defendant Garnzey also told Plaintiff she did not "care about [Plaintiff's] symptoms, or [Plaintiff's] stomach," and that "the only reason [she] called [Plaintiff] out is so [he] can't tell on [her] for not seeing [him.]" (*Id*.) Defendant Garnzey said she would help Plaintiff when he "learn[ed] to quit telling" and that Plaintiff should "leave [Defendant Garnzey's] name out of [his] grievances[.]" (*Id*.)

Plaintiff was subsequently transferred from DRF to SLF in St. Louis, Gratiot County, Michigan. (Attachment B to Compl., ECF 1-2, PageID.24.) Plaintiff alleges that between October 14, 2025, and February 5, 2026, while at SLF, Plaintiff was denied "proper testing" and medical treatments by Defendant Burrows. (*Id*.) Plaintiff claims that Defendant Burrows then lied by saying that it was Plaintiff that had refused. (*Id*.) Plaintiff wrote multiple kites to Defendant Burrows in which Plaintiff explained his worsening symptoms and told Defendant Burrows that he was in "extreme pain." (*Id*.)

On January 25, 2026, while still at SLF, Plaintiff told Defendant Adams that he was experiencing chest pains, shortness of breath, tremors, "spots and stars" in his vision, and severe headaches, but Defendant Adams refused to see him. (*Id*.; Attachment C to Compl., ECF No. 1-3, PageID.25.) Defendant Adams told Plaintiff that he was fine and that she was not going to waste her time seeing Plaintiff that day. (*Id*.) Defendant Adams did tell Plaintiff that she would see him the following day. (*Id*.)

On February 3, 2026, Defendant Burrows went to Plaintiff's cell. (Attachment B to Compl., ECF No. 1-2, PageID.24.) Defendant Burrows told Plaintiff, "Go f*** off rat ass b****[,] you been snitching on my nurses[.]" (*Id*. (asterisks added).) Defendant Burrows also said to Plaintiff that he did not care what was wrong with Plaintiff, that he "hope[d] it[']s poison or cancer," and that if they were lucky Plaintiff would "die a painful death." (*Id*.)

By February 22, 2026, Plaintiff had been transferred to ECF. (Compl., ECF No. 1, PageID.3; Attachment D to Compl., ECF No. 1-4, PageID.26.) On that day, Plaintiff told Defendant Pant that he was experiencing chest pains, a seizure, and a "breathing issue." (Attachment D to Compl., ECF No. 1-4, PageID.26.) Defendant Pant called Plaintiff a liar and a drug addict, and said that Plaintiff needed to leave medical staff alone because they were busy. (*Id*.)

Thereafter, Plaintiff alleges that he eventually went to the hospital on an unspecified date, at which time a blood test showed that plaintiff was "fighting some poison or infection[.]" (Compl., ECF No. 1, PageID.10.) Plaintiff claims that his symptoms have gotten worse because of the lack of treatment. (*Id*.) Specifically, Plaintiff alleges that his breathing "is worse," he has blood in his stool, he "pass[es] out regularly," and that he experiences "serious seizures," muscle spasms, and convulsions. (*Id*.) He also alleges that he is in "extreme pain." (*Id*., PageID.6.)

4

In addition to the allegations regarding his medical care, Plaintiff also alleges that he has had paperwork stolen by an unidentified non-party correctional officer at SLF to cover up the denial of medical care. (*Id*., PageID.7, 9, 17.) Plaintiff has also submitted written complaints to "the Warden" regarding the denial of medical care. (*Id*., PageID.7.) Plaintiff informed the Warden of SLF, a non-party, that he was denied medical care, and the Warden replied, "too bad." (*Id*., PageID.9.) Plaintiff alleges that on an unspecified date, he filed a grievance but never received a response. (*Id*., PageID.7.) Plaintiff also claims that he has been harassed by unidentified "staff," retaliated against, and treated differently than other prisoners.[2] (*Id*., PageID.9.)

Based on the foregoing allegations, Plaintiff raises Eighth Amendment denial of medical care claims, First Amendment retaliation claims, and Fourteenth Amendment procedural due process claims. Plaintiff seeks monetary damages and injunctive relief. (*Id*., PageID.10.)

## III.    Misjoinder

### A.    Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

---

[2] It is not clear from Plaintiff's complaint where these events with these non-party individuals occurred.

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

6

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Garnzey is the first listed Defendant in the case caption and the first Defendant named in the "Defendants" section of Plaintiff's complaint. (Compl., ECF No. 1, PageID.1, 2.) Plaintiff alleges that while he was at DRF, Defendant Garnzey refused to administer a blood test to Plaintiff because Plaintiff had gotten Defendant Garnzey in trouble by filing a grievance against her. (Attachment A to Compl., ECF No. 1-1, PageID.19.) Plaintiff then alleges that while housed at SLF, Defendants Burrows and Adams failed to provide medical testing and/or treatment to Plaintiff. (Attachment B to Compl., ECF No. 1-2, PageID.24; Attachment C to Compl., ECF No. 1-3, PageID.25.) Plaintiff further alleges that after he was transferred to ECF,

7

Defendant Pant denied medical treatment to Plaintiff. (Compl., ECF No. 1, PageID.3; Attachment D to Compl., ECF No. 1-4, PageID.26.) In addition to the above-discussed Defendants, Plaintiff also names "MDOC Staff" as a Defendant. (Compl., ECF No. 1, PageID.1.)

It appears that Plaintiff believes that all of the events set forth in the complaint are related because they all involve the denial of medical testing or treatment. But the Court does not find that Plaintiff's allegations against Defendants Garnzey are transactionally related to the claims against Defendants Burrows, Adams, and Pant because the events occurred at different correctional facilities and involve separate instances of alleged inadequate medical care. See *Proctor*, 661 F. Supp. 2d at 778. Specifically, the allegations against Defendant Garnzey occurred at DRF. (Attachment A to Compl., ECF No. 1-1, PageID.19.) Conversely, the allegations against Defendants Burrows and Adams occurred at SLF, and the allegations against Defendant Pant occurred at ECF. (Attachment B to Compl., ECF No. 1-2, PageID.24; Attachment C to Compl., ECF No. 1-3, PageID.25; Attachment D to Compl., ECF No. 1-4, PageID.26; Compl., ECF No. 1, PageID.3); see *Proctor*, 661 F. Supp. 2d at 778. Under these circumstances, the Court concludes that Plaintiff has improperly joined Defendants Burrows, Adams, and Pant to this action. Reading Plaintiff's complaint in the light most favorable to him, as the Court is required to do at this time, the Court concludes that Defendants Garnzey and "MDOC Staff" are properly joined.

## B. Remedy

Because the Court has concluded that Plaintiff has improperly joined Defendants Burrows, Adams, and Pant to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S.

8

567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Here, Plaintiff's complaint involves events that occurred starting in 2025. (*See generally* Compl., ECF No. 1.) Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against Defendants Burrows, Adams, or Pant, and Plaintiff has provided no

basis for this Court to conclude that he would suffer gratuitous harm if his claims against these Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Burrows, Adams, and Pant because they are misjoined. The Court will dismiss Plaintiff's claims against these Defendants without prejudice.[3]

## IV.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

---

[3] Plaintiff is advised that any new civil actions in this Court must be filed on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and at the time of filing his complaint, Plaintiff must pay the required filing fees or apply in the manner required by law to proceed *in forma pauperis*. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). The Court addresses Plaintiff's claims against the properly joined Defendants, Defendant "MDOC Staff" and Defendant Garnzey, below.

### A.    Defendant "MDOC Staff"

In the caption of Plaintiff's complaint, he lists "MDOC Staff" as a Defendant. (Compl., ECF No. 1, PageID.1.) Plaintiff does not provide any further information about this Defendant. (*See id.*, PageID.2–3.) In the body of his complaint, Plaintiff makes various factual allegations regarding the conduct of "staff," "medical providers," or unidentified correctional officers. (*Id.*, PageID.6, 7, 9, 11, 17; Attachment C to Compl., ECF No. 1-3, PageID.25; Letter, ECF No. 1-4, PageID.28, 30, 32.)

To the extent that Plaintiff intended to bring any claims against the MDOC, the Court determines that Plaintiff has failed to state a claim upon which relief may be granted. Section 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). However, the State of Michigan (acting through the MDOC) is not a "person" within the meaning of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (holding

11

a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person.").

Additionally, to the extent that Plaintiff intended to bring any claims against "MDOC Staff," the Court determines that Plaintiff has failed to state a claim upon which relief may be granted against that Defendant. The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). And, "[s]ummary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for retaliation." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Here, to the extent Plaintiff sought to bring any claims against "MDOC Staff," he has failed to state a claim against that vague group of unidentified individuals.

Accordingly, for these reasons, Plaintiff fails to state a claim upon which relief may be granted against Defendant MDOC or "MDOC Staff." The Court will dismiss all intended claims against Defendant MDOC and "MDOC Staff."

### B.    First Amendment Retaliation Claims

Plaintiff alleges that Defendant Garnzey's refusal to provide medical testing to Plaintiff was retaliation for Plaintiff filing a grievance against Defendant Garnzey. (Attachment A to Compl., ECF No. 1-1, PageID.19.) Plaintiff claims that at the time that Defendant Garnzey refused to provide that testing, she told Plaintiff that she would help Plaintiff when he "learn[ed] to quit telling," and that until then Plaintiff should "leave [her] name out of [his] grievances." (*Id.*)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to

12

set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Additionally, to establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

At this early stage, accepting Plaintiff's allegations as true and "weighted in favor of the plaintiff," *Denton v. Hernandez*, 504 U.S. 25, 32 (1992), the Court will not dismiss Plaintiff's First Amendment retaliation claim against Defendant Garnzey.

### C.  Eighth Amendment Denial of Medical Care Claims

Plaintiff alleges that Defendant Garnzey failed to provide health care to Plaintiff and exhibited a deliberate indifference to Plaintiff's health. (Attachment A to Compl., ECF No. 1-1, PageID.19.) The Court will construe these allegations as raising a claim of violation of the Eighth Amendment.

13

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes, U.S. Const. amend. VIII, and the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Id.* (quotation marks omitted). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety[.]" *Id.* Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835.

Plaintiff alleges that he was seen by Defendant Garnzey on July 23, 2025, at which time Defendant Garnzey refused to administer a blood test to Plaintiff. (Attachment A to Compl., ECF No. 1-1, PageID.19.) In Plaintiff's complaint, he does not identify any symptoms that he was experiencing in July 2025 or the medical concerns that he communicated to Defendant Garnzey at that time. Elsewhere in the complaint, Plaintiff alleges that as of February 2026, he was "in extreme pain" and had "very serious" symptoms. (Compl., ECF No. 1, PageID.6.) Plaintiff claims that

14

when he eventually went to the hospital on an unspecified date, a blood test showed that his immune system was "fighting some poison or infection." (*Id*., PageID.10.) Plaintiff alleges that at that time, his breathing had worsened, he had blood in his stool, he passed out "regularly," and he experienced "serious seizures, muscle spasms, and convulsions." (*Id*.) But Plaintiff does not identify which of these symptoms, if any, he was experiencing in July 2025.

In short, Plaintiff's allegations are insufficient to show that on July 23, 2025, when he was seen by Defendant Garnzey, he had a medical need that was sufficiently serious. *Farmer*, 511 U.S. at 834. Indeed, Plaintiff does not allege any facts about the symptoms that he was experiencing in July 2025 or the medical concerns that he communicated to Defendant Garnzey at that time. Under these circumstances, Plaintiff's allegations, or lack thereof, about his symptoms and health in July 2025 when he was seen by Defendant Garnzey do not show that he faced a substantial risk of serious harm. *Id*.

Accordingly, for these reasons, Plaintiff's Eighth Amendment denial of medical care claims against Defendant Garnzey will be dismissed for failure to state a claim.

### D. Fourteenth Amendment Equal Protection Claims

Plaintiff vaguely contends that Defendant Garnzey discriminated against Plaintiff by denying him medical care. (Attachment A to Compl., ECF No. 1-1, PageID.19.) The Court will construe this allegation as raising a claim for violation of the Fourteenth Amendment Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show

15

that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, although Plaintiff uses the word "discrimination" when setting forth his claims, Plaintiff fails to allege any facts to support his conclusory assertions. Indeed, Plaintiff fails to allege any facts to suggest that he was treated differently than others who were similarly situated. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, any intended Fourteenth Amendment equal protection claims will be dismissed for failure to state a claim.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. For the foregoing reasons, the Court will drop Defendants Burrows, Adams, and Pant as misjoined pursuant to Rule 21 of the Federal Rules of Civil Procedure. The Court will dismiss Plaintiff's claims against these Defendants without prejudice. Further, having conducted the review required by the PLRA,

16

the Court determines that Defendant MDOC/"MDOC Staff" will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against Defendant Garnzey: (i) Eighth Amendment denial of medical care claim, and (ii) Fourteenth Amendment Equal Protection Clause claim. Plaintiff's First Amendment retaliation claim against Defendant Garnzey remains in the case.

An order consistent with this opinion will be entered.


Dated:   July 22, 2026                          /s/ Paul L. Maloney
                                            Paul L. Maloney
                                            United States District Judge